IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 13-cv-000462-RBJ-MJW

TSUTOMU SHIMOMURA,

    Plaintiff.
v.

KENDRA CARLSON, an agent of the Transportation Security Administration,
in her individual capacity,
TERRY CATES, an agent of the Transportation Security Administration,
in her individual capacity,
PATTI ZELLER, an agent of the Transportation Security Administration,
in her individual capacity, and
WADE DAVIS, a Denver Police Department officer, in his individual capacity,

    Defendants.

## ORDER

    This is a case about what started as a relatively minor incident in the Denver International Airport but, due I think to a momentary lapse of judgment by the participants, has grown into a federal court case in which serious constitutional principles are claimed to be at stake. It is before the Court on the defendants' motions to dismiss or for summary judgment. Although the Court does not necessarily condone all of their conduct, it grants the defendants' motions.

## FACTS

    Tsutomu Shimomura alleges that on February 22, 2011 he was going through a security checkpoint at DIA when a TSA agent took his properly labeled 180cc bottle of prescription medication and used a sampling strip to test the bottle's contents for the presence of explosive materials. [ECF No. 1 at ¶¶ 10, 13]. He was concerned that touching the sampling strip to the dispensing mechanism on the bottle might have contaminated the medicine and created a risk to

his health, so he inquired about the sterility and composition of the strip. *Id.* at ¶ 14. The agent was not able to answer his questions satisfactorily, so he asked to speak to her supervisor. *Id.* at ¶¶ 14–15.

TSA Agent Kendra Carlson, a supervisor, was summoned. *Id.* at ¶ 16. Mr. Shimomura expressed concern about contamination and informed Agent Carlson that the procedure did not follow proper TSA protocol. *Id.* The Complaint does not lay out the back and forth that followed, but one might imagine its temperature from the fact that a Denver Police Officer, Wade Davis, came to the scene and stood close by, observing everything that occurred upon and after his arrival. Mr. Shimomura was unhappy with the response he was getting—or not getting—from Agent Carlson and asked to speak to her supervisor, only to be rebuffed with the retort "I am the supervisor." *Id.* at ¶ 18.

The Complaint does not tell us how the contamination discussion ended, but it does suggest that the encounter reached the point where Agent Carlson ordered Mr. Shimomura to "get the hell" out of the area. *Id.* at ¶ 19. Mr. Shimomura commented that he needed to retrieve a computer bag still sitting in the bin. Agent Carlson retrieved it, but upon handing it to Mr. Shimomura, she allegedly again threatened to have him arrested, this time if his exit did not occur in "two seconds." *Id.* at ¶ 20. Mr. Shimomura said something about checking to make sure everything was there, causing Agent Carlson to take umbrage at what she perceived to be an accusation of stealing, and thereby setting off another round of spurned requests to speak to her supervisor.

Exasperated, Mr. Shimomura turned to Officer Davis, who up to that point had merely been standing by, and told him that he wanted to speak to Agent Carlson's supervisor. When Officer Davis indicated that he couldn't help, Mr. Shimomura copied down his name and badge

2

number. That did not sit well. Officer Davis allegedly threatened to arrest Mr. Shimomura if he did not move in "two seconds." *Id.* at ¶ 21. And both Agent Carlson and Officer Davis "crowded" Mr. Shimomura in a threatening manner. *Id.*

But, all might still have ended well enough had it not been for what occurred next. Mr. Shimomura alleges that as he began walking away, pulling his roller bag behind him, Agent Carlson – with Officer Davis at her side – followed "closely and aggressively." *Id.* at ¶ 22. After taking a few steps, Mr. Shimomura "paused," whereupon Agent Carlson walked into the bag, her right leg touching the bag's right corner. *Id.* Fortunately, from the Court's perspective at least, this part of the fray was captured on a security video. More on that later.

That was enough, according to Mr. Shimomura, to push Agent Carlson and Officer Davis over the edge. Agent Carlson accused Mr. Shimomura of assaulting her with the rolling bag. Officer Davis, claiming that he had witnessed an assault, directed Mr. Shimomura to sit on a bench in the screening area. He then huddled with Agent Carlson and two other TSA agents, Terry Cates and Patti Zeller, ostensibly to compare notes and get their stories straight. According to Mr. Shimomura, Officer Davis and Agent Carlson then decided to charge Mr. Shimomura with assault. Officer Davis served him with a criminal complaint. Each of the four conspirators allegedly prepared "coordinated" and "false statements supporting this decision." *Id.* at ¶¶ 30–38.

Mr. Shimomura claims that he was detained for approximately an hour and a half. By the time he was released from TSA and police custody he had missed his flight and had to buy a new ticket on a different flight.

The criminal complaint was dismissed after the prosecuting attorney saw the security footage. Indeed, although he accuses TSA of delaying disclosure of the video to him, editing

key portions out, and providing no audio to go with it, he states that his lawyer obtained one of the video's key portions, i.e., a portion that establishes that defendants' assault allegations were false. The Court has been provided with a copy of the video and, because Mr. Shimomura has placed great reliance on it and has essentially incorporated it into his Complaint, I have taken a look at it. Having done so, I am not at all surprised that the D.A. dropped the criminal charge after he looked at it. It shows minor contact between the bag and Agent Carlson, at most, and lends no support to the charge that Mr. Shimomura intentionally or recklessly assaulted her.

With this factual background in mind, I turn to the task of trying to make some sense out of the variety of legal wrongs Mr. Shimomura claims to have suffered and the motions that want to make them all go away.

## CLAIMS

Mr. Shimomura claims that Defendants violated a number of his constitutional rights. In particular, he alleges that Defendants (1) arrested him in retaliation for exercising his First Amendment rights; (2) arrested him without probable cause in violation of the Fourth Amendment; (3) deprived him of liberty without due process of law in violation of the Fifth and Fourteenth Amendments; (4) took part in a civil conspiracy to deprive him of his civil rights in violation of 42 U.S.C. § 1983; and (5) aided and abetted each other in the commission of the civil rights violations.

Officer Davis has filed a Motion to Dismiss [ECF No. 10] as well as a Motion for Summary Judgment [ECF No. 42] effectively objecting to every one of Mr. Shimomura's claims. The three TSA Agents have filed a joint Motion to Dismiss [ECF No. 41] doing the same. The motions also make out claims for qualified immunity for each defendant.

## ANALYSIS

**I. TSA DEFENDANT'S MOTION TO DISMISS [ECF No. 41].**

In reviewing a motion to dismiss, the Court must accept the well-pleaded allegations of the complaint as true and construe them in the plaintiff's favor. However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations that are purely conclusory are not entitled to be assumed true. *Id.* at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

**A. Retaliatory Arrest Under the First Amendment.**

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citations omitted). To establish a claim of retaliation for exercising one's First Amendment rights, the plaintiff must show that: (1) the plaintiff was engaged in a constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the activity; and (3) the plaintiff's exercise of the constitutionally protected activity substantially motivated the defendant's adverse action. *Van Deelen v. Johnson*, 497 F.3d 1151, 1155–56 (10th Cir. 2007). Assuming, without deciding, that Mr. Shimomura was engaged in constitutionally protected speech, and that the arrest he suffered would chill a person of ordinary firmness from

continuing to engage in the speech, Mr. Shimomura has not sufficiently pled that the arrest was substantially motivated by his speech.

To satisfy the third prong, Mr. Shimomura must establish that "but for the retaliatory motive" his arrest would not have taken place. *See Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Looking at the facts as pleaded, and taking them as true, Mr. Shimomura does nothing more than show that he and Agent Carlson had a significant personality conflict. Rather soon after meeting, both individuals started to become frustrated with the other and their discussion became heated, even downright hostile. Nothing in the Complaint convinces me that Agent Carlson became hostile *because of* Mr. Shimomura's speech so much as because of their distaste for each other. Further, the pleadings don't come close to suggesting that Officer Davis arrested Mr. Shimomura in retaliation for his requests to speak with Agent Carlson's supervisor. As I will discuss later on, Officer Davis appears to have made the arrest because of a mistaken belief that an assault took place.

What this situation shows is a lack of good judgment on the part of both Mr. Shimomura and Agent Carlson. The interaction should have never escalated to where it did, and had either person seriously attempted to deescalate it I doubt we would be here today. However, the unfortunate fact that neither person had the foresight to step back from the situation while tensions were rising does not establish that a retaliatory arrest took place under the First Amendment. This claim is dismissed for failure to state a claim upon which relief can be granted.

   B. **Arrest without Probable Cause**.

Officer Davis addresses the Fourth Amendment in the context of his qualified immunity argument, and I address that argument below. Here I consider the claim as it relates to the three TSA agents, defendants Carlson, Cates, and Zeller.

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. A person who is arrested without probable cause and without a warrant has been subject to an illegal arrest that violates the Fourth Amendment. *See e.g.*, *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). An arrest occurs when "by means of physical force or a show of authority, an individual's freedom of movement is restrained." *Romero v. Story*, 672 F.3d 880, 885 (10th Cir. 2012) (internal quotation marks, alterations, and citations omitted). In particular, the restraint must make it "such that a reasonable person would have believed he was not free to leave." *Florida v. Royer*, 460 U.S. 491, 502 (1983) (plurality opinion).

Mr. Shimomura alleges that defendants Carlson, Cates, and Zeller violated the Fourth Amendment when he was arrested without probable cause. In particular, he alleges that all three agents conferred with Officer Davis about arresting him and charging him with a crime. [ECF No. 1 at ¶ 27]. The Complaint then quotes excerpts from the written statements that they made concerning the incident, claiming that the quoted portions of the statements were coordinated, false, made for the purpose of causing and justifying Mr. Shimomura's arrest, and omitted exculpatory facts. *Id.* ¶¶ 30–33, 35, 37.

Specifically, Agent Cates' statement relates that Mr. Shimomura "attempted to cut off Carlson path [sic] with his roller bag." Agent Zeller's statement relates that she "observed" Mr. Shimomura "push his bag into Carlson's path, nearly causing her to trip." Those statements do not support a false arrest claim against either Cates or Zeller. Neither Cates nor Zeller stated that

7

Mr. Shimomura hit Agent Carlson with his bag; yet, it is the alleged contact with Carlson and the pain that she claims to have sustained that fueled the arrest.

Agent Carlson's situation is different. Her statement, as quoted in the Complaint, was that Mr. Shimomura "look[ed] me right in the eye, . . . forcefully shoved his roller bag into my legs on purpose, hitting me in both ankles and shins, [and] did create pain at the moment." *Id.* at ¶ 31. Mr. Shimomura alleges that this statement is false. *Id.* I must take this statement of fact as true at this point. Moreover, the video tends to support him, as it appears to show that the contact between the bag and Agent Carlson was to her right leg only.

Mr. Shimomura's Fourth Amendment claim against Agent Carlson can survive only if but for Carlson's dishonesty the arrest would not have occurred. *See Snell v. Tunnell*, 920 F.2d 673, 698 (10th Cir. 1990). However, although he perhaps hints at it, Mr. Shimomura does not specifically allege that, but for the false statement, he would not have been arrested. This omission can be easily fixed in an amended complaint. But before amending I commend to plaintiff's attention Officer Davis' recounting of the incident in which he seems to say that he based his decision to arrest Mr. Shimomura on his actual witnessing of the bag striking Agent Carlson's legs and Agent Carlson's report that she felt pain in her ankles and shins. [ECF No. 42 at ¶¶ 7–9]. Suffice it to say that it is not clear that Mr. Shimomura can ultimately sustain an allegation that but for Carlson's report that both her legs had made contact with the bag, the arrest would not have been made.

In any event, as the pleadings now stand, the Court grants the motion to dismiss the Fourth Amendment claims against all three TSA agents.

### C. Deprivation of Liberty Without Due Process.

8

The Fifth Amendment provides that "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  The Fourteenth Amendment extends this prohibition to state actors, who may not "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. IVX, § 1.

Procedural due process protects individuals against "arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).  In order to proceed under a procedural due process claim, a plaintiff must demonstrate that (1) he possessed a protected interest of life, liberty, or property; and (2) the procedures utilized that impacted his protected interest were inadequate under the circumstances. *See Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998).

The basis for Mr. Shimomura's Fourteenth Amendment claim is that Officer Davis illegally arrested him, thereby depriving him of his liberty interest.  His Fifth Amendment claim is, presumably, that Agents Carlson, Cates, and Zeller helped effectuate his arrest, thereby also depriving him of his liberty interest.  Mr. Shimomura is effectively asking this Court to find that any illegal arrest also violates the Due Process Clause.  However, the Supreme Court has already made it clear that this type of repetitive claim is inappropriate, at least in these circumstances.

"[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks omitted) (finding that the plaintiff, who argued that he had a liberty interest to be free of criminal prosecution without

probable cause, should have made a Fourth Amendment, not Fourteenth Amendment, claim);[1] *see also Pierce*, 359 F.3d at 1285 (citing *Albright* for the holding that the initial seizure is governed by the Fourth, not Fourteenth, Amendment).

Considering that his due process claim effectively mirrors his allegation of illegal arrest under the Fourth Amendment, Mr. Shimomura has failed to state a claim under the Fifth and Fourteenth Amendments upon which relief can be granted.

### D. Civil Conspiracy.

"[A] conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law" pursuant to § 1983 is actionable. *See Snell*, 920 F.2d at 701. In order to prevail on such a claim, the plaintiff "must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Id.*

"A conspiracy requires the combination of two or more persons acting in concert." *Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th Cir. 2004) (internal quotation marks, alterations, and citations omitted). "In order to plead a conspiracy claim, a plaintiff must allege, either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants." *Id.* (internal quotation marks, alterations, and citations omitted). The plaintiff must show that there was "a single plan, the essential nature and general scope of which [was] know [*sic*] to each person who is to be held responsible for its consequences." *Snell*, 920 F.2d at 702 (citations omitted).

To establish a valid civil conspiracy claim, Mr. Shimomura must show that there was an agreement among Officer Davis and the other defendants to arrest him without probable cause, and that he was, in fact, illegally arrested. The first prong is as far as I need to go at this point.

---

[1] While Mr. Shimomura argues that his *procedural* due process rights were violated, the difference is irrelevant. In both cases, the plaintiffs' claims boil down to alleged Fourth Amendment violations. The principle articulated in *Albright* thus applies.

10

A conspiracy often needs to be proven with circumstantial evidence, because there will rarely be direct evidence of an agreement to conspire. *Snell*, 920 F.2d at 702. However, "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556. "Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* at 556–57; *see also Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.") (citations omitted).

As discussed above, Mr. Shimomura has alleged that the four defendants acted in concert to charge him with assault without probable cause and in retaliation for his protected speech. However, while anything can be alleged, for it to survive the first round of motions it must allege facts that with some degree of plausibility might state a claim. Unfortunately, Mr. Shimomura fails at this task.

To begin, a pleading that two or more individuals "took joint and concerted action" is a mere conclusory statement that the Court is bound to disregard. Mr. Shimomura also has no evident factual basis for alleging that while he was in custody the defendants conspired to charge him with assault. The effort seems to be to back up this allegation with the allegation that the four defendants coordinated the factual allegations in their written statements to support Carlson's and Davis' false allegations that Mr. Shimomura assaulted Carlson. But even the excerpts from the statements quoted in the Complaint fall short of that. Accordingly, the motion to dismiss the civil conspiracy claim is granted.

### E. Aiding and Abetting.

Without taking a position as to whether civil aiding and abetting liability exists for constitutional rights violations, I find that Mr. Shimomura has not pled a plausible claim of aiding and abetting liability. The Complaint fails to establish that any of the defendants were aware of his or her role as part of a tortious activity and knowingly and substantially assisted the principal violator. Therefore, this claim is dismissed for failure to state a claim upon which relief can be granted.

### F. Conclusion.

For the above reasons, all claims against defendants Carlson, Cates, and Zeller are hereby dismissed. I need not consider their qualified immunity claims or the extension of *Bivens* to First Amendment actions.

## II. OFFICER DAVIS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT [ECF No. 42].

Initially, I conclude that the claims against Officer Davis other than the Fourth Amendment false arrest claim must be dismissed for failure to state a claim for essentially the same reasons as are discussed above with respect to the TSA agents. I need not repeat my findings and conclusions here. Suffice it to say that, in my view, the Complaint was complicated by the addition of several claims that essentially are a diversion from the main issue. The real kernel of this case is the claim that that Officer Davis had no business arresting Mr. Shimomura and charging him with a crime. Although Mr. Shimomura might have brought his troubles on himself to some extent, my impression from what I have read and seen is that he was poorly treated at the end. But his false arrest claim under the Fourth Amendment only continues if Officer Davis' claim of qualified immunity fails. I turn to that next.

### A. Summary Judgment in the Qualified Immunity Context.

Officer Davis' qualified immunity claim rests on matters outside the four corners of the pleadings, and as such, it is considered in a summary judgment context. Summary judgment may only be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (internal quotations marks omitted) (citing Fed. R. Civ. P. 56(c)). However, the assertion of a qualified immunity defense alters the standard analysis somewhat. *See, e.g.*, *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009).

"After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must establish that (1) the defendant's actions violated a constitutional right, and (2) the constitutional right was clearly established. *See e.g.*, *id.*; *Martinez*, 563 F.3d at 1088. The Court has discretion in deciding which of the two prongs should be analyzed first. *Martinez*, 563 F.3d at 1088. Only when the plaintiff meets his initial burden "does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008). Nevertheless, "[e]ven though the plaintiff bears the burden of making this two-part showing, we construe the facts in the light most favorable to the plaintiff as the nonmoving party." *Kaufman*, 697 F.3d at 1300 (internal quotation marks, alterations, and citations omitted).

### B. **Qualified Immunity.**

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from

harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity protects state actors from liability as well as suit but only if their conduct does not violate clearly established constitutional rights of which a reasonable person should have known. *Id.* "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 555 U.S. at 244 (internal quotation marks and citation omitted). Overall, qualified immunity "operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 731 (2002).

To summarize, I elect to begin with the question whether Officer Davis had probable cause to arrest Mr. Shimomura. Because I am satisfied that Mr. Shimomura has met his burden to establish that probable cause did not exist, I then turn to the second issue, i.e., whether Mr. Shimomura's rights were clearly established, which in this case I approach by asking whether Officer Davis had "arguable probable cause." *See Kaufman*, 697 F.3d at 1300.

1. Probable Cause.

In a qualified immunity context, the probable cause evaluation is a question of law appropriate for resolution by the Court. *See Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (reversing a holding that the probable cause determination was a question for the trier of fact because "[i]mmunity ordinarily should be decided by the court long before trial").

"In the context of a false arrest claim, an arrestee's constitutional rights were violated if the arresting officer acted in the absence of probable cause that the person had committed a crime." *Kaufman*, 697 F.3d at 1300. "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing

14

an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (citation omitted). "Probable cause must be evaluated in light of circumstances as they would have appeared to a prudent, cautious, trained police officer." *United States v. Snow*, 82 F.3d 935, 942 (10th Cir. 1996) (citation omitted). The Court's analysis is an objective one: "would the facts available to the officer at the moment of the seizure . . . warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968) (internal quotation marks omitted). Finally, probable cause is based on the totality of the circumstances at the time the arrest occurs. *See United States v. Munoz-Nava*, 524 F.3d 1137, 1144 (10th Cir. 2008).

Here, there might be some degree of disagreement as to whether Officer Davis merely detained Mr. Shimomura for a "brief" period of time or actually arrested him. However, neither party disputes that Mr. Shimomura was detained for one and a half hours. Without getting into the thick of it, Officer Davis has not persuaded me that this lengthy detention did not amount to an arrest, let alone that it somehow fits the definition of brief. Mr. Shimomura has effectively pleaded that through a show of authority, his freedom of movement was restrained such that a reasonable person would have believed he was not free to leave. This constitutes an arrest. It does not appear that Officer Davis, at least in retrospect, seriously contests this proposition, given that his entire argument is relegated to a one-sentence footnote in his summary judgment motion. [ECF No. 42, at 8 n.2].

Proceeding from there, the question is whether the arrest was based upon probable cause. Mr. Shimomura was charged with a violation of Denver's municipal law. The Revised Municipal Code of Denver, § 38-93 Assault, provides: "It shall be unlawful for any person to intentionally or recklessly assault, beat, strike, fight or inflict violence on any other person." Denver, Colo., Municipal Code § 38-93 (1982). The word "assault" is not defined in the

Municipal Code, but under Colorado state law assault in the third degree requires that the defendant cause "bodily injury." Colo. Rev. Stat. § 18-3-204 (2012). Bodily injury means "physical pain, illness, or any impairment of physical or mental conditions." Colo. Rev. Stat. § 18-1-901(3)(c) (2013).

In his Motion for Summary Judgment, Officer Davis argues that he had probable cause to arrest Mr. Shimomura for misdemeanor assault because he witnessed "Mr. Shimomura's roller bag strike Agent Carlson in the legs." [ECF No. 42-1 at ¶ 6]. Further, Agent Carlson informed Officer Davis "that she had pain in her ankles and shins as a result of the roller bag striking her legs." *Id.* at ¶ 7. Officer Davis' official report also states that "Carlson fell forward but caught herself." [ECF No. 48-1 at 14].

Officer Davis offered into evidence a copy of the security footage, [ECF No. 42-2], stating that it was "a true and accurate description of the events [he] witnessed . . . ," [ECF No. 42-1 at ¶ 8]. However, upon watching this footage, it appears to me that Mr. Shimomura's roller bag, at most, came into contact with Agent Carlson's right leg. In addition, as Officer Davis surely witnessed, it appears that any contact that occurred was accidental (i.e. negligent), if not Agent Carlson's own fault. The video does tend to show that she was aggressively and closely following Mr. Shimomura as he exited the screening area. Finally, nothing in the video supports the notion that Agent Carlson fell forward but caught herself. Instead, she appears to have rather adeptly stepped out of the way of the roller bag before or right after its minimal contact with her right leg.

Considering what the security tape shows, and taking into account the weight Officer Davis gives to its accuracy, I fail to see how probable cause supported Mr. Shimomura's arrest for assault. Taking the evidence in the light most favorable to the plaintiff, I find that Mr.

Shimomura has met the first prong of the qualified immunity test by establishing that no probable cause existed to support the arrest.

    2. Clearly Established Right.

"As to whether the law was clearly established at the time of the alleged violation, we require a section 1983 plaintiff to show that it would have been clear to a reasonable officer that probable cause was lacking under the circumstances." *Kaufman*, 697 F.3d at 1300 (internal quotation marks and citation omitted). As a practical matter, the Court must ask whether there was "arguable probable cause" for an arrest, and, if there was, find that the defendant is entitled to qualified immunity. *Id.*

"Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part." *Brinegar v. United States*, 338 U.S. 160 (1949). Yet, the mistakes must be reasonable; officers must act "on facts leading sensibly to their conclusions of probability." *Id.* Requiring more than this would unduly hamper law enforcement. However, "[t]o allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice." *Id.*

"Our inquiry into whether a constitutional right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." *Bowling*, 584 F.3d at 964 (internal quotation marks and citation omitted). In particular, "[w]hen a warrantless arrest is the subject of a § 1983 action, the arresting officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to make the arrest." *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1191 (10th Cir. 2007). "[L]aw enforcement officials who reasonably but mistakenly conclude that probable cause is

present are entitled to immunity." *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007); *see also Koch v. City of Del City*, 660 F.3d 1228, 1241 (10th Cir. 2011).

In sum, the Court is presented with whether Officer Davis made a reasonable mistake when he concluded that probable cause existed to support the arrest for misdemeanor assault. Considering the specific context of this case, I believe his mistake was reasonable.

Though viewing the surveillance video led me to the conclusion that no probable cause existed to arrest Mr. Shimomura, I also acknowledge that the series of events occurred very rapidly. In fact, I had to watch the video multiple times to make sure that I didn't miss anything. The entire incident takes place within a matter of seconds. Agent Carlson claimed to have been hit, and she claimed to have suffered pain. From an objective viewpoint, I believe that a reasonable police officer might well consider the statements of a TSA agent who claimed to have been hit and hurt by an irate and agitated passenger to be trustworthy information. *See Cortez*, 478 F.3d at 1121.

I pause here to add that, in my time on the bench, I have been educated in the difficult task one faces in overcoming qualified immunity. *See Lynch v. Barrett*, 703 F.3d 1153 (10th Cir. 2013); *Savannah v. Collins*, No. 13-1245, 2013 WL 6171012 (10th Cir. Nov. 26, 2013). This is not to say that I would not reject that defense in a proper case. That, after all, is my job. But having reflected on the set of facts alleged here, I conclude that it was arguable, from the standpoint of a reasonable police officer, that there was probable cause to arrest. Therefore, Officer Davis is entitled to the protection of qualified immunity.

**ORDER**

1. The TSA defendants' motion to dismiss [ECF No. 41] is GRANTED.

2. Officer Davis' motion to dismiss or for summary judgment [ECF No. 42] is GRANTED.

3. This civil action and all claims therein are dismissed with prejudice. As the prevailing parties, the defendants are awarded their costs pursuant to Fed. R. Civ. P. 54(d) and D.C.COLO.LCivR 54.1.

DATED this 14th day of February, 2014.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge